

**FILED**

8:40 am, 3/9/23

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

DENISE FREEMAN,

        Plaintiff,

vs.

CITY OF CHEYENNE, a duly
incorporated Municipal Corporation under
the laws of the State of Wyoming,

        Defendant.

Case No.  22-CV-80-F

---

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's and Defendant's cross  motions  for summary judgment. ECF 30; ECF 32. Plaintiff Denise Freeman's complaint alleges that her former employer, Defendant City of Cheyenne, violated the Americans with Disabilities Act of 1990 and the Americans with Disability Act Amendment Act, 42 U.S.C. § 12101 *et seq.*, collectively referred to as the ADA.

Plaintiff alleges two counts of ADA violations. The first count is for denial of reasonable accommodation under 42 U.S.C. § 12112(b)(5)(A). In this count, the Plaintiff alleges that she had a qualifying disability that was not reasonably accommodated by the Defendant.

The second count is a claim of discriminatory discharge because of disability, or need for accommodation, under 42 U.S.C. § 12112(b)(5)(B). In this count, the Plaintiff

alleges that she had a qualifying disability, and that when she requested accommodation the Defendant did not accommodate her disability and simultaneously terminated her employment. Plaintiff alleges she was terminated because of her disability or because of her request for reasonable accommodation.

Plaintiff seeks summary judgment in her favor, asserting that she has met her *prima facie* case for both counts and that Defendant has failed to prove that her requested accommodation would constitute an undue burden. Defendant counters by seeking summary judgment, arguing that Plaintiff has failed to meet her *prima facie* case. For the following reasons, the Court DENIES Plaintiff's motion, GRANTS Defendant's motion, and hereby GRANTS summary judgment to Defendant.

## I.    *Facts*

The following relevant facts appear undisputed except where noted. Plaintiff Freeman was employed as the Human Resource Director ("HR Director") for Defendant City of Cheyenne. ECF 33, p. 2.; ECF 31, p. 3. During the course of this employment, Plaintiff's supervisor changed from Mayor Rick Kaysen to Mayor Marian Orr. ECF 33, p. 4.; ECF 31, p. 4. Plaintiff's new supervisor operated her workplace in a manner that Plaintiff asserts was abusive and created a stressful work environment. ECF 33, p. 7. Defendant disputes that Mayor Orr was abusive but does not appear to dispute that Plaintiff experienced stress from her work environment. *See* ECF 31, p. 5, Fn. 1. Plaintiff then attended a scheduled appointment with a physician who diagnosed Plaintiff with depression, anxiety, and insomnia. ECF 33, p. 7.

Plaintiff submitted a request for six weeks of leave under the Family and Medical Leave Act ("FMLA") which was granted. ECF 31, Ex. 11. The Plaintiff was instructed by the document which authorized FMLA that she would need to provide a fitness-for-duty certificate to be restored to employment. ECF 33, Ex. 3, p. 1. The request included supporting information from the physician detailing Plaintiff's diagnoses. *See* ECF 31, Ex. 9, pp. 3-4. This supporting information contained a six-week estimation for the period of incapacity. *Id.* As the end of that period approached, Plaintiff's physician recommended an extension of another six weeks of FMLA, which was granted. *See* ECF 33, Ex. 4. After those final six weeks were granted, Plaintiff then requested to take her remaining eight days of paid leave, followed by 160 hours of sick leave from a communal bank of sick hours administered by Defendant. ECF 33, Ex. 5; ECF 33, Ex. 6. Defendant denied this request and simultaneously terminated Plaintiff. ECF 33, Ex. 7; ECF 31, Ex. 24.

## II.    *Legal Standards for Rule 56 Motions*

The Court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Aubrey v. Koppes*, 975 F.3d 995, 1004 (10th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). The movant may show this by "either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Tolman v. Stryker Corp.*, 108 F. Supp. 3d 1160, 1162 (D. Wyo. 2015), *aff'd,* 640 F. App'x 818 (10th Cir. 2016); *see* Fed. R. Civ. P. 56(c)(1)(A)–(B).

To defend against a motion for summary judgment the nonmoving party must then "support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute." *Tolman*, 108 F. Supp. 3d at 1162–63 (citing Fed. R. Civ. P. 56(c). The presence of a genuine dispute over a material fact renders summary judgment inappropriate. *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018).

This standard requires more than the "mere existence of *some* alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis supplied). Rather, it requires "there be no *genuine* issue of *material* fact." *Id.* (emphasis supplied). A material fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. Additionally, the dispute regarding material facts is only genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

On a motion for summary judgment, the Court "'examine[s] the record and all reasonable inferences that might be drawn from it in the light most favorable to the nonmoving party, without making credibility determinations or weighing the evidence.'" *Roberts,* 884 F.3d at 971, n. 3 (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1213 (10th Cir. 2015). However, the Court "do[es] not have to accept versions of the facts contradicted by objective evidence." *Estate of Beauford v. Mesa Cty.*, 35 F.4th 1248, 1261 (10th Cir. 2022). Additionally, "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)

4

(citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Id.* (citation omitted).

### III.  *Analysis*

Plaintiff brings two claims. ECF 1, pp. 9, 10. The first is for denial of reasonable accommodation, and the second is for discriminatory discharge. *Id.* The Court will examine these claims separately and in the order in which they were pled.

### A.  Claim for Denial of Reasonable Accommodation

Plaintiff's first claim is that she was denied a reasonable accommodation by her employer. *Id.* at p. 9. The basis in law for this claim is found in 42 U.S.C § 12112(b)(5)(A), which defines discrimination to include:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

*Id.* To succeed on this claim, Plaintiff bears the burden of establishing the *prima facie* case. *See Koppes*, 975 F.3d at 1006. To establish a *prima facie* case Plaintiff must show that: she had a disability, she was otherwise qualified, she requested a plausibly reasonable accommodation, and the Defendant refused to accommodate her disability. *Koppes*, 975 F.3d at 1005.

### i.  Whether Plaintiff Had a Disability

Plaintiff asserts she "was an individual with a disability under 42 U.S.C § 12102." ECF 1, p. 9. Disability, for the purposes of the ADA, is defined by 42 U.S.C. § 12102(1) as (A) "a physical or mental impairment that substantially limits one or more major life

activities of such individual;" (B) "a record of such an impairment;" or (C) "being regarded as having such an impairment." *Id.* In further arguments, Plaintiff narrows down this assertation to (A) and (B). ECF 33, p. 14. While Defendant concedes Plaintiff has "identified a mental impairment"[1] (ECF 36, p. 11), Defendant argues there is no evidence that such impairment substantially limited her performance of a major life activity as compared to the general population.  Thus, Defendant argues Plaintiff cannot establish she is disabled.

In 2008, as a result of the reasoning and decisions in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), the ADA was amended. ADA AMENDMENTS ACT OF 2008, PL 110–325, September 25, 2008, 122 Stat 3553. The express purpose of the amendment was to legislatively overrule these cases and re-expand the scope of protection afforded by the ADA. *Id.* The legislature reiterated that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id*. The statute itself directs that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C.A § 12102 (emphasis added). Whether the plaintiff has identified a major life activity is normally a question of law for the court, while the degree of substantial limitation is ordinarily a question of fact for the jury. *Crowell v.*

---

[1] Plaintiff presented evidence that she was diagnosed with anxiety, depression, and insomnia. *See* ECF 33, Ex. 3, p. 7.

*Denver Health and Hosp. Authority*, 572 F.App'x 650, 657 (10th Cir. 2014); *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007).

> The relevant statute defines major life activities as:
>
> includ[ing], but []not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. . . . a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

§ 12102(2).

Here, Plaintiff has expressly raised that her ability to focus and work were substantially affected. ECF 1, p. 7; *see also* ECF 33, Ex. 1, p. 6. Focusing is not one of the listed major life activities. However, § 12102(2), which uses the language "not limited to," is not an exhaustive list. Focusing is similar to, and often used in conjunction with, thinking and concentrating. *See e.g., Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 542 (7th Cir. 2008); *Verhoff v. Time Warner Cable, Inc.*, 299 F.App'x 488, 493 (6th Cir. 2008); *Osborne v. Romark Laboratories, L.C.*, 3:08-1000, 2009 WL 3517538, at *5 (M.D. Tenn. Oct. 22, 2009).

Plaintiff has also raised insomnia. ECF 1, p. 7; ECF 33, Ex. 1, p. 6. The Court takes judicial notice that insomnia is defined by Stedman's Medical Dictionary as the "[i]nability to sleep, in the absence of external impediments . . . during the period when sleep should

normally occur." *Insomnia*, Stedman's Medical Dictionary (2014).[2] Insomnia and sleeping therefore appear to be inextricably related. Thus, Plaintiff has adequately identified that she is affected in the major life activities of focusing, sleeping, and working.

The Plaintiff must also have been substantially limited in these areas. *See* § 12102(1)(A). While determination of substantial limitation is normally left to the jury, there must be a sufficient evidentiary basis that a reasonable jury could conclude for the plaintiff to survive a motion for summary judgment. *See Crowell*, 572 F.App'x at 658; *see also Berry,* 490 F.3d at 1216. Specifically, the plaintiff must provide some evidence that a major life activity was substantially limited "as compared to most people in the general population." *Crowell*, 572 F.App'x at 658; 29 C.F.R. § 1630.2(j)(1)(ii).

For the major life activity of focusing, the record is devoid of evidence to support that Plaintiff was substantially limited in this area as compared to most people in the general population. The only reference to focusing or concentration outside of the complaint is contained within her deposition testimony. ECF 33, Ex. 1, p. 6. There she merely states that her medical conditions "substantially affected my ability to concentrate[.]" Such a conclusory statement, without more, cannot create a genuine issue of material fact substantial enough to survive a motion for summary judgment. *See Crum*, 439 F.3d at 1230.

---

[2] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." USCS Fed Rules Evid R 201(b)(2). The court may take judicial notice on its own and judicial notice may be taken at any stage of the proceeding. USCS Fed Rules Evid R 201(c)(1),(d)*; See also* Gonzales v. Carhart, 550 U.S. 124, 152 (2007) (using Stedman's Medical Dictionary to judicially notice the definition of "deliver" in the context of pregnancy).

For the major life activity of sleeping, the record is clear that Plaintiff was diagnosed with insomnia by her physician. *See* ECF 33. Ex. 3, pp. 7-8. This clearly indicates that Plaintiff's sleep was limited. However, insomnia covers sleep limitations that "may vary in degree from restlessness or disturbed slumber to a curtailment of the normal length of sleep or to absolute wakefulness," *Insomnia*, Stedman's Medical Dictionary (2014). The degree that Plaintiff's specific case of insomnia limited her as compared to most people in the general population and thus, whether this major life activity was substantially limited is a question for the jury.

For the major life activity of working, the record provides adequate evidence from which a reasonable jury could conclude that Plaintiff was substantially limited compared to most people in the general population. The record contains testimony and written statements from Plaintiff's physician that she was unable to perform functions of her job, specifically that she could not effectively interact with her co-workers. ECF 33. Ex. 3, pp. 7-8. The record also links the diagnosis of depression, anxiety, and insomnia to Plaintiff's inability to perform those functions. *See id.*

Defendant urges the Court to reject substantial limitation in the major life activity of working because courts have found that "a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working." *Allen v. SouthCrest Hosp.*, 455 F.App'x 827, 835 (10th Cir. 2011) (quoting Appx to Part 1630—Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. Pt. 1630, App., effective May 24, 2011) (rejecting a claim that a Plaintiff's major life activity of working is substantially

limited within the meaning of the ADA when she was only unable to work for a specific supervisor rather than substantially limited in her ability to perform a broad class of jobs).

Here, like *Allen*, the Defendant asserts that Plaintiff's activity of working was also only limited in this particular job because she was supervised by a particular supervisor and her disability did not prevent her from working under other supervisors. ECF 31, pp. 12-13. However, in the light most favorable to Plaintiff, the record only reflects the physician's opinion and diagnosis that Plaintiff was unable to interact with her co-workers. ECF 33, Ex. 3, p. 8. Whether or not this was in reference to specific co-workers, and as such would only be related to the unique aspects of a single job, or whether Plaintiff was unable to work with any coworkers, and therefore, work at most jobs, is a question for the jury.

Turning next to the issue of whether Plaintiff had a record of impairment, this rests solely on whether she "has a history of . . . a mental or physical impairment that substantially limits one or more major life activities. 29 C.F.R. § 1630.2(k). The legislature has directed the courts to construe this broadly and not demand extensive analysis. *Id.* In this case, the defendants were aware of the FMLA requests and the requests for additional leave, which contained information and diagnosis relating to Plaintiff's impairments. *See* ECF 31, Ex. 9; ECF 31, Ex. 23. In the light most favorable to Plaintiff, the presence of information regarding her diagnosis, which had been in the possession of the Defendant, would constitute a history of the impairment known to Defendant.  For the same reasons discussed above, whether that impairment substantially limits one or more major life activities is a question of fact for the jury.

### ii.     Whether Plaintiff was Otherwise Qualified

The second element of Plaintiff's *prima facie* case is that she must have been otherwise qualified. A qualified individual is one who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Koppes*, 975 F.3d at 1006 (quoting 42 U.S.C. § 12111(8)). As discussed below, Plaintiff cannot establish that she was otherwise qualified because she failed to raise accommodations that would enable her to perform the essential functions of both being physically present and interacting with coworkers.

Essential job functions are determined by a variety of factors including, but not limited to "the employer's judgment as to which functions are essential; . . . the amount of time spent on the job performing the function; the consequences of not requiring the incumbent to perform the function; and . . . the work experience of past incumbents in the job." 29 C.F.R. § 1630.2(n)(iii). Deposition testimony from Mayor Orr, Plaintiff's direct supervisor, provides evidence that physical attendance and interaction with co-workers to both be essential job functions. ECF 31, Ex. 5, pp. 5-6. Additionally, a list of essential job functions in the form of a job description was signed by the Plaintiff. ECF 31, Ex. 4. This document requires the Human Resource Director to "[w]ork closely with others in an office environment[.]" *Id*. The document also refers to many functions of the job such as giving advice, providing staff assistance, attending and participating in professional group meetings, selecting personnel, assessing and monitoring workloads, and maintaining files. *Id*. Many of these functions could not be accomplished without interacting with co-workers. Furthermore, these functions require physical attendance of the employee.

Working remotely and working in an office environment are particularly conflicting as doing one would necessarily preclude the other. Finally, Plaintiff offers no evidence rebutting Defendant's assertion that physical attendance and interaction with co-workers are essential job functions. Therefore, the Court finds there is no genuine dispute of material fact that physical attendance and interaction with co-workers are essential job functions of the HR Director.

The Defendant also asserts that the HR Director position requires a minimum of forty hours per week. ECF 36, p. 19. They have provided evidence in the form of an affidavit from the current HR Director detailing the amount of time required of an HR director at the time of Plaintiff's request for accommodation. ECF 36, Ex. 1, p. 1. Plaintiff does not appear to contest this because her own filings and declaration assert that she "typically worked more than 40 hours each week." ECF 33, p. 6; ECF 33, Ex. 1, p. 5. Therefore, the Court finds there is no genuine dispute of material fact that the HR Director position required a minimum of forty hours per week of work.

Having determined that physical attendance and interacting with co-workers are essential job functions, the analysis proceeds to the determination as to whether the Plaintiff is qualified to perform these functions. Whether an individual is qualified is focused on the moment in time of the requested accommodation or adverse event, not on whether the individual was qualified at some other point in time. *See Koppes*, 975 F.3d at 1006*; see also Carter v. Pathfinder Energy Services, Inc*., 662 F.3d 1134, 1146 (10th Cir. 2011).

At the time that Plaintiff requested to continue her leave with her remaining vacation hours, followed by 160 hours of time from the sick bank, she was on FMLA leave because she could not interact with co-workers. *See* ECF 33, Ex. 5; ECF 33, Ex. 6. Nowhere in the record does it appear that, as of the request for accommodation, Plaintiff would have been able to interact with coworkers. Additionally, the record contains evidence that, in order to return to work, Plaintiff would have needed to provide a fitness-for-duty certificate. ECF 33. Ex. 3, p. 5. The record does not contain evidence that Plaintiff could have secured this certificate to return to work. Therefore, at the time of the accommodation request Plaintiff was unable to be in physical attendance at her workplace and unable to interact with her co-workers. This is further supported by Plaintiff's email to Mayor Orr, where she explicitly stated that she was unable to return to work at the time of her request. ECF 33, Ex. 5.

If, as here, the "court concludes that an individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable [her] to perform those functions." *Mason v. Avaya Commun., Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004). Plaintiff asserts that Defendant's failure to engage in an interactive process precludes Defendant from prevailing at summary judgment. ECF 37, p 11. This argument has been considered and rejected several times by the Tenth Circuit. *See, e.g.*, *White v. York Intern. Corp*., 45 F.3d 357, 363 (10th Cir. 1995); *Smith v. Midland Brake, Inc., a Div.of Echlin, Inc*., 180 F.3d 1154, 1174 (10th Cir. 1999); *Koppes*, 975 F.3d at 1009-10.  Rather, Plaintiff must establish "that there was, in fact, a reasonable accommodation that would have enabled her to perform the essential functions of her job

or another job to which [Defendant] could have assigned her." *Id*. Plaintiff's burden at this stage is not great, she need only provide evidence of any reasonable accommodation that existed that would have enabled her to perform those essential functions, with the benefit of discovery already having been afforded to her. *Smith*, 180 F.3d at 1174 (relying on the reasoning in *Willis v. Conopco, Inc.*, 108 F.3d 282, 287 (11th Cir. 1997)).

Plaintiff has presented reassignment, working remotely and/or part-time, additional leave, or "any number of other possible accommodations" as accommodations that would have enabled her to perform the essential functions of her job. ECF 33, pp. 11, 17-18. For the following reasons, these accommodations are unreasonable and Plaintiff has not met her burden to prove that she was "otherwise qualified."

In regard to reassignment, Plaintiff is required to identify the specific vacant position to which Defendant could reasonable have reassigned them. *Koessel v. Sublette County Sheriff's Dept.*, 717 F.3d 736, 745 (10th Cir. 2013). Plaintiff has not identified a specific vacant position, merely concluding that she would have "considered other positions." ECF 33, Ex. 1, p. 8. Because Plaintiff has not identified a vacancy, reassignment does not constitute a reasonable accommodation.

As to remote work, part-time work and various "other possible accommodations," the Court has recognized that an essential function of Plaintiff's position was physical attendance. When remote work would eliminate an essential function of the job then such a request is unreasonable. *Mason,* 357 F.3d at 1124. Further, it has been established that the HR Director position required at least forty hours of work per week. Therefore, an accommodation of working part-time would also be unreasonable as it would eliminate an

essential function of the job. *Carter*, 662 F.3d at 1147 (noting that part-time work is only appropriate if the employee can perform all essential functions while working part-time). Finally, Plaintiff's assertion that she would have considered "any number of other possible accommodations" is too vague to meet the plaintiff's burden because unspecified accommodations cannot be tested for plausibility nor facial reasonableness. *See Koppes*, 975 F.3d at 1010.

The only remaining accommodation is the one that was actually requested by the Plaintiff prior to her termination: additional leave. "It is well-settled that a request for leave may lead to a 'reasonable' accommodation." *Id.* (quoting *Punt v. Kelly Services*, 862 F.3d 1040, 1051 (10th Cir. 2017)). Leave "may allow an employee sufficient time to recover from an injury or illness such that the employee can perform the essential functions of the job (i.e., attend work) in the future." *Punt*, 862 F.3d at 1051. However, an employer is not obligated to retain a disabled employee on unpaid leave indefinitely or for an excessive amount of time. *Koppes*, 975 F.3d at 1011 (quoting *Boykin v. ATC/VanCom of Colorado, L.P.*, 247 F.3d 1061, 1065 (10th Cir. 2001)); *see also Punt*, 862 F.3d at 1051; *Hudson v. MCI Telecomm. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996). In order to have the request be considered definite, the employee must provide an expected duration of the impairment, not merely the length of leave. *Punt*, 862 F.3d at 1051.

Here, the only expected duration of the impairment can be seen on the initial request for FMLA wherein the physician notes that the period of incapacity will be for six weeks. *See* ECF 33, Ex. 3, p. 8. Plaintiff's estimated period of incapacity was set to expire in June 2018. *See* ECF 33, Ex. 3, p. 1. Thereafter, the physician recommended in a note that the

leave be extended for six more weeks but makes no mention of the period of incapacity. *See* ECF 33, Ex. 4, p. 2. Looking at this note in the light most favorable to the Plaintiff, a reasonable jury could find that it extended the entire physician's recommendation by six weeks, which would have included the expected period of incapacitation.

However, Plaintiff's next communication with Defendant regarding leave cannot support the same inference. The only communication following the extension of leave are requests for definite periods of leave, eight days from her remaining vacation time followed by 160 hours from the sick bank. *See* ECF 33, Ex. 5; ECF 33, Ex. 6. These requests are not accompanied by any statements from the physician that would link them to the FMLA requests and thereby link them to the period of incapacity. *See id.* Even though the sick bank request is accompanied by a statement from Plaintiff's therapist, this statement lists only her diagnosis, not an expected duration of impairment. *See* ECF 33, Ex. 6.  Further, Plaintiff's only statements about her condition do not give an expected duration of impairment, only that she is "not yet able to return to work" and "unable to return to work." *See* ECF 33, Ex. 5; ECF 33, Ex. 6.

These facts are distinct from those found in *Koppes* as in that case the plaintiff had an estimated timeline for recovery that had been communicated to her employer and had not yet elapsed at the time of the employment actions. *Koppes*, 975 F.3d at 1011. Here, the elapsed nature of the physician's estimate followed by requests for more leave with no further estimate of the duration of Plaintiff's impairment, nor any evidence that the granting of further leave requests would enable her to perform the essential functions of her job, makes her requests for additional leave unreasonable as a matter of law.

For the foregoing reasons, Plaintiff has not presented a triable issue of material fact as to whether she was otherwise qualified and therefore has failed to establish her *prima facie* case for denial of accommodation.  Thus, summary judgment on this claim shall be granted in favor of Defendant .

### B.  Claim of Discriminatory Discharge

To establish a *prima facie* case of discriminatory discharge under 42 U.S.C. § 12112(b)(5)(B), Plaintiff must show that "[s]he is disabled within the meaning of the ADA; . . . that [s]he is qualified for the job held or desired; and . . . that [s]he was discriminated against because of h[er] disability. *Koppes*, 975 F.3d at 1014; *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first two elements of the *prima facie* case for discriminatory discharge are the same as the first two elements for a *prima facie* case for failure to accommodate a disability. *See Koppes*, 975 F.3d at 1014. In alignment with the previous analysis of these elements, Plaintiff has failed to establish her *prima facie* case for discriminatory discharge as she is not able to create a triable issue of fact that she is qualified for the job held.

### *IV.   Conclusion*

For each of the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment (ECF 30). Accordingly, Plaintiff's motion for summary judgment and partial summary judgment (ECF 32) is **DENIED**. Plaintiff's Complaint (ECF 1) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** this 9th day of March, 2023.

_____
NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE